The next case on our call today is docket number 15, number 128-575, Alec Pinkston, individual, etc. v. City of Chicago. Counsel for Appellant, are you prepared to proceed? Good morning, Your Honors. May it please the Court? My name is Elizabeth Tischer, and I represent the City of Chicago. Alec Pinkston received a ticket for parking at an expired meter within the City of Chicago's Central Business District. He challenged that ticket in the City's Department of Administrative Hearings, which I will also refer to as DOAH, and he was found liable. He did not seek administrative review and instead paid the fine. He now seeks a second bite of the apple by bringing a class-action complaint in the Circuit Court and raising a defense that he never even raised before DOAH. Well-settled precedent and principles of judicial economy foreclosed Mr. Pinkston's action. We ask this Court to reverse the judgment of the Appellate Court. This morning I will first explain that dismissal was proper because Mr. Pinkston failed to exhaust his administrative remedies. I will then explain in the alternative that dismissal was proper because the voluntary payment doctrine forecloses Mr. Pinkston's action. Turning first to exhaustion, it is well-settled that an aggrieved party must exhaust his administrative remedies before seeking relief in the Circuit Court. The Appellate Court majority concluded that the exception for lack of an adequate administrative remedy applies, but it rejected all of the other exceptions raised by Mr. Pinkston and he does not challenge those rulings. As for the Appellate Court majority's conclusion that Mr. Pinkston lacked an adequate administrative remedy, that was error. Mr. Pinkston had an adequate remedy in the Department of Administrative Hearings. He alleges the City fined him for parking at an expired meter within the City's Central Business District, even though the address on the ticket was located outside the boundaries of that district where the fines are lower. But that is precisely the type of dispute that DOAH was created to handle. Indeed, the General Assembly authorized municipalities to provide by ordinance for a system of administrative adjudication of vehicular parking violations, and accordingly, the City provided a very simple and straightforward process within DOAH for contesting a parking ticket. Counsel, isn't the complaint more about a systemic allegation rather than individual liability, so that would make it appropriate for judicial review? Correct, Your Honor. The complaint does allege a routine practice, but that does not excuse Mr. Pinkston from exhausting in this case, and there are a couple of reasons for that. First of all, this case does involve factual questions. So those issues, regardless of whether the complaint alleges any sort of routine practice, all of those individual statements... If we're talking about a systemic problem that the parties are alleging throughout the City's process, how would that be resolved in the course of an administrative review? Well, Your Honor, I would like to make a couple of points in regard to that question. And first, I want to point out that it is really the administrative review is the appropriate remedy in all of these types of cases. The fact that there are allegations of a routine practice, that isn't unusual in cases like this. My question is much more narrow than that. I think that that's the crux of their argument, that this is a systemic problem that the judiciary has to resolve and it has very little applicability within the context of an administrative hearing. That's their argument, as I understand it. So can you respond to that? Yes, Your Honor. And the Department of Administrative Hearings, at minimum, would need to adjudicate the factual questions at issue in this case. And I would like to point out some of the precedent that we discuss in our brief. And in those cases, in the Midland Hotel case in particular, is appropriate here. And in that case, the court, the appellate court, rejected the very same argument that Mr. Pinkston makes in this case, in that, you know, the administrative process provides no remedy for this sort of ongoing illegal conduct. And in that case, the court said that the parties would still need to prevail before the administrative agency and through the administrative process before seeking any, you know, injunction or other equitable relief in the circuit court. And the same goes here as well, because we have factual questions that need to be resolved before DOAH, and only if Mr. Pinkston or any of the other putative class members can prevail before DOAH and have a determination that they do indeed have, you know, a bad ticket. Only in that circumstance. So if Pinkston had petitioned the Department of Administrative Hearings for a full or partial relief, and if he prevailed, then how would he proceed with the class action for the injunction or restitution for the other class members? What would be his plan? Well, Your Honors, if he had obtained, if he'd prevailed before DOAH and had a determination that he was not liable for that ticket on the basis that, you know, it was a bad ticket, that it was, you know, inconsistent on its face, he could then take that into the circuit court and he could potentially, he could attempt to petition for an injunction. We, you know, our position is that there are definitely hurdles to obtaining injunctive relief. Wait a minute. If he prevailed, he would then seek an injunction on the basis of, what would he be seeking if he prevailed at the administrative level? He could raise the same allegations that he does here, that the city has a, you know, widespread or routine practice that needs to be enjoined. But in that case, the factual issue would have been resolved by the agency. He would have prevailed. So I'm not, I guess I'm at a loss to understand how that makes more sense than going directly to the circuit court. Well, Your Honor, in either case, there are hurdles to obtaining that injunctive relief. And so our position is that, you know, those, the hurdles that he would have in obtaining any sort of injunctive relief in this case, those exist in this case, whether he's, you know, somehow bypassing the exhaustion requirement, and they would exist as well if he had prevailed as well and had exhausted his administrative remedies. So to obtain an injunction, either in this present class action or in some sort of class action following exhaustion, he has to show that he has no adequate remedy at law and he has to show irreparable injury. But DOAH, that administrative process, that is the remedy at law that was provided for by the General Assembly and the exclusive method for dealing with parking tickets of this nature. So he has to show that he has no adequate remedy to obtain injunctive relief with or without exhaustion and irreparable harm as well. He has to show irreparable harm. We're talking about two different things because I'm asking about the underlying systemic problem that the plaintiff was complaining about, not the individual parking ticket. That's not what he's complaining about, as I read it. Correct, Your Honor. But in this case, the court can't even determine if there is any widespread practice or systemic conduct unless and until it adjudicates all of those tickets. So if Mr. Pinkston were allowed to bypass his administrative remedies, then all of those, you know, in this case there's potentially 30,000 in the allegations, maybe more. Those would fall on the circuit court and the circuit court would be required to adjudicate those before there can even be any sort of determination if there's a widespread practice. And that is exactly why the General Assembly has created this sort of exclusive process for challenging these tickets is that these sort of run-of-the-mill, you know, determinations, these types of disputes are more appropriately handled through these administrative procedures so that the agencies can use their expertise and their experience to handle them very quickly and efficiently. And if Mr. Pinkston had gone the route that was required of him, if he had raised this particular defense in DOAH, and he did indeed, as we point out, he did raise one defense in the Department of Administrative Hearings. So he was able to go through that process. He was able to do it by mail. He can also do that online. He can easily get an adjudication for, you know, in minutes. It takes minutes, costs next to nothing to go that route. He could have raised this. He very may well have prevailed. He could have avoided paying his ticket altogether, and that would have provided sort of the adequate relief that's guaranteed. It would have made him whole, and it would have potentially obviated the need for any judicial relief in the first place. And so what impact does it have that he didn't even raise the same challenge that he's making now to the ticket, and the hearing officer had no opportunity to even address that issue, correct? Correct. And Mr. Pinkston's position has been that, you know, that he wouldn't have needed to raise that, that it would have been futile for him to do so, but there's no obligation for the Department of Administrative Hearings to sua sponte, address, you know, review the ticket and determine if it's inconsistent on its face or if there are any other problems with it. Those are defenses. The defense that he specifically raises in this case is expressly contemplated in the municipal code as one that, you know, an aggrieved party can bring to the attention of the Department of Administrative Hearings, and he had an obligation to do that, and he did not do that. So he is also collaterally attacked. You know, we view this also as a collateral attack on the decision of the Department of Administrative Hearings because he did not raise that, and he's now attempting to attack the DOH's determination of liability with a defense that he could have raised in DOH. And also, if the party was seeking an injunction against this kind of widespread practice, could he get that in the administrative proceeding? DOH cannot itself provide for an injunction. Okay. So wouldn't that be a reason for going directly to the circuit court if his assertion was this is a widespread practice. It has nothing to do with this particular parking ticket. It has to do with a practice that's widespread, and the only way to stop that practice is for an injunction to be issued, and that can only be issued by a court, right? It is true that only the court could issue the injunction, but that does not... If that's his argument, I'm just trying to flesh this out a bit. If that's his argument, why would it be necessary for him to go to the administrative body first? Well, Your Honor, the administrative procedure that's available to Mr. Pinkston here, and that's, you know, going through DOH and then, you know, to the circuit court on administrative review, that is the process that the General Assembly has identified as sort of in lieu of seeking injunctive relief and other sort of equitable relief in the circuit court. For parking tickets. For parking tickets, correct. I'm talking about injunctive relief to fix the kind of problem that would be best resolved through a class action lawsuit or something like that, which is what the allegations are here. Your Honor, even if, as I pointed out earlier, even if Mr. Pinkston did want to, you know, did seek injunctive relief in the circuit court, it's still necessary for him to prevail in the administrative process and receive a determination that he did indeed have a bad ticket. And that's because those are the... That is the role of DOH here is to do that sort of fact-finding and, you know, the application of the municipal code that is squarely within, you know, the province of the administrative agency. Otherwise, those functions would fall onto the circuit court. And I would like to point out that this Court has previously held and rejected the very same arguments that Mr. Pinkston does make in this case. And I want to draw the Court's attention specifically to People x Rel Not in v. Swank, which we do cite in our brief. And in that case, the Court specifically held that an aggrieved party cannot circumvent its administrative remedies with a class action for injunctive, declaratory, and other relief. And in that case, the plaintiffs, you know, they filed a class action, raising sort of the similar type of allegations at issue here, where they alleged what could be, you know, described as a routine or widespread practice adopted by the Illinois Department of Public Aid for, you know, the method that the Department had for awarding public assistance in a certain manner. And they sought declaratory judgment that the Department's regulations were invalid, and they sought a writ of mandamus ordering, you know, directing the Department to promulgate new regulations. So they did seek to essentially enjoin a widespread, you know, ongoing legal practice. But there, this Court still held that plaintiffs could not disregard the administrative procedures established by the General Assembly. And so this was even despite the fact that this was not, you know, these were not issues of individual, you know, individual eligibility determinations, but these were identified as, you know, as challenges to sort of a practice that the agency had. And there are numerous appellate court cases as well that have relied on Naughton to reach the same conclusion as Naughton, as we do explain in our brief. And as I pointed out, you know, Midland Hotel specifically does explain as well that or does hold that a party must first prevail in an administrative action before it can even attempt to seek any equitable relief in the circuit court. And I would also like to point out that, you know, in the cases that we do cite in our brief, those cases even involved the type of like a rule or a standard or some sort of something specifically expressly adopted by the agency for, you know, for example, a rule or standard for awarding benefits or awarding assistance. And so there were legal issues in those cases that needed to be determined, but the court still held that the parties needed to go through the administrative process first and exhaust their remedies before they could seek any sort of relief in the circuit court. But in this case, we don't even have any legal issues. We only have factual ones. And that issue, the factual issues are whether the individuals who received tickets were, you know, received tickets for parking at expired meters within the central business district but were in fact parked outside the central business district. And so that's the only question in this case. Of course, there are other questions if this, you know, class action were to proceed, and that would be whether, you know, the individual putative class members had already paid their fines. So there are sort of individual procedural questions as well for each of the specific plaintiffs, you know, the putative class members. So we only have factual questions. We don't have any legal issues that would be, you know, appropriate for the circuit court to address. So in that case, exhaustion is even more, you know, acute in this case. The need for it is even more acute in this case than in the cases we cite in our brief. And I also want to point out that the fact that Mr. Pinkston alleges, you know, 30,000 tickets and alleges that this is a widespread practice, that does not excuse exhaustion, but in fact counsels in favor of exhausting administrative remedies. And the reason is that, you know, this is the precise reason why the General Assembly provided these types of systems that the General Assembly authorized municipalities to provide for a fair and efficient system to handle these types of disputes outside of the court so they would not clog up the circuit court. So the sheer number of tickets involved in this case is not a reason to avoid exhaustion, but actually a reason to go through that administrative process. Counsel, if a class was certified in this case, their individual issues wouldn't be adjudicated individually in the circuit court, would it? They'd be part of the class. In this particular case, each individual ticket would have to be reviewed and determined if it was actually a good or a bad ticket. So it would require that sort of individual adjudication. And, you know, in this case But how would that be different from any other class action lawsuit that involves lots of people, thousands of people? Well, you know, and of course we haven't gotten into the class certification yet in this case, but it would certainly, as we do point out in our brief, it does the fact that these are just individual factual issues does complicate the class certification process potentially because there aren't those sort of predominant legal issues. But we're not talking about, of course, the class certification at this point. But I'm just asking that because of your efficiency argument. And I just was wondering, how does that factor into your argument? Because these cases would not be adjudicated individually if the plaintiff achieved his goal of having a class action lawsuit certified. Isn't that correct? I understand your question. It's correct that these wouldn't be individually adjudicated as separate actions in the separate legal actions, but they would certainly have to be reviewed by the court. Each claim would have to be reviewed individually, and those would have factual questions. And that is precisely why we have a process like DOAH so that the DOAH can handle those and potentially obviate the need for any sort of class action in the first place because the exhaustion requirement, it requires an adequate administrative remedy, and that's really just a make-whole remedy for the individual who's bringing the challenge. So as long as there's a remedy available that makes Mr. Pinkston whole, then he is required to avail himself of that remedy and potentially can't seek any injunctive relief because the injunction itself requires the lack of an adequate remedy at law, and DOAH is that remedy. If Mr. Pinkston or any of the putative class members had gone through DOAH in that process, they could have avoided paying the fine altogether. And I wouldn't... You said how does that remedy the systemic problem of, as you're alleging, of knowingly going beyond the scope of this area to issue these tickets, whether an individual can get relief doesn't address whether a group or a class can stop this practice. Well, Your Honor, it is correct that if there were some sort of, you know, evidence that there was something more than just... Our position, of course, is that these 30,000 tickets, this is really just an overall... It's a very small percentage of tickets. The city issues millions of tickets every year. Would that be an appropriate issue even before DOAH? I see you're out of time, Your Honor, if I may just respond to that question. So DOAH would provide the remedy of potentially obviating the need to seek any judicial relief in the first place because an individual could get their ticket adjudicated, determined it's a bad ticket. Beyond that, if there's any evidence that there's any practice that's anything more than just mistakes of individual ticketing agents, then somebody could attempt to use that in the circuit court to seek injunctive relief in, you know, an individual action or a class action. As long as they have that determination from the agency that they had, you know, essentially a bad ticket, they could use that as a way to obtain that injunctive relief. And, of course, it's not, you know, it's our position that that would not prevail, that he could not seek an injunction, but that would, it's not the administrative, you know, the exhaustion that would prevent the injunction, that would be the hurdle to the injunction, that there are other sort of hurdles to that. But that's why we have DOAH as the process to adjudicate individual tickets and then to adjudicate any future tickets as well in a very simple, straightforward manner. And thank you, Your Honors. Thank you very much. Counsel. Counsel for the appellee. Good morning, Your Honors. Matthew Ray for the plaintiff appellee. May it please the Court. As this Court and others statewide have recognized, there are some circumstances where the exhaustion doctrine simply doesn't make sense. And this is one of those cases. Now, as mentioned during counsel's argument, the issue in this case does not have to do with a single ticket. It doesn't have to do, it's not a collateral attack on a particular finding of liability. What this case seeks to stop and put an end to and remedy is the city's routine and systematic practice of issuing these tickets to cars that are parked outside of the city's central business district. And do we know whether or not that's even the case with your client? Do we know whether or not he was issued a ticket outside of the central business district? Well, Your Honor, number one, we do from the sense that as alleged on this ticket, it alleges an address that is outside of the city's central business district. Under Illinois law, the facts set forth on the ticket are assumed to be prima facie correct. So at the very least, it's a prima facie finding or prima facie evidence. If left unrebutted, it would be sufficient to establish that it's clear. There was no opportunity for a hearing officer to determine that. So there was no opportunity for the city to rebut that. And how does that impact things here if your client hasn't even established that he was wrongfully given a ticket for being in the central business district? Well, Your Honor, I don't understand why the city would want to rebut that allegation, whether he was in or outside. It was the city that made the allegation in the first place. If there was going to be any rebuttal during the administrative process, it would have been by the plaintiff in this case saying that the facts alleged on the ticket are wrong or don't support the violation alleged. So I would say as far as that issue goes, it's essentially been conceded by a plaintiff that the facts that are set forth on that ticket are correct, that his car was located where it was alleged to have parked. And his payment of the ticket conceded that he had violated the ordinance for parking within the central business district. Well, Your Honor, I understand the point that Your Honor is making. But the issue is that at the time that he paid the ticket, he was not aware of this routine and systematic practice that he's trying to seek to put an end to. And that's sort of the key distinction that I'm trying to draw here. I think the questions that I'm asking are these sound like fact questions. You know, where was he parked? Was he in fact, as he pled guilty to or at least stipulated to when he paid the fine, within the central business district? I mean, that's what we have in front of us. How do we go beyond that? So, Your Honor, that fact may be relevant to the individualized adjudication of plaintiff's ticket. And that was something that was mentioned in counsel's argument where, oh, he could have went to the DOAH and he could have raised these issues and stuff. And certainly the DOAH could have determined where his car was parked. But what the issue is here is that the plaintiff is trying to put a stop to this. And, you know, we're on a motion to dismiss technically. So, you know, he's alleged that there's this routine and systematic practice. He has evidence and data that was collected from, you know, Freedom of Information Act requests that show that this, you know, that supports those allegations, not that that's necessary. But he's made a showing at this point that there is this routine and systematic practice. And his allegation here is not so much that, well, my ticket was wrong in the past. His allegation here is the city has this routine practice. I want to put a stop to it. Wouldn't he have to establish standing? And yes, Your Honor. And in the complaint he does allege, you know, and this is a little far afield from the issues, but he does allege that he drives the car in the city frequently. He parks, you know, in and outside the central business district because of this routine. So, obviously, I'm concerned about the fact question. Yes, yes. Because that leads to the administrative review question. So you're saying that the basis of his complaint, his standing to bring this complaint, is not that he received a ticket and paid for a ticket that was, in fact, outside of the central business system. That's not the basis of his theory in the class action case. Is that right? I would say that it's both, Your Honor. So he's seeking to redress the harm that was caused by the practice retrospectively, but he's also seeking to him and other similarly situated individuals, and he's also seeking prospective relief that seeks to enjoy this practice going forward. And with respect to that relief, and that's a point that I want to emphasize here, is that I understand that there is this administrative process, that people can challenge their tickets, and if they get one of these tickets, they have the ability to go before the DOAH. The issue that the plaintiff has here is that he's saying we shouldn't have to. The city should just do it right from the beginning. Why do we need to go and go through a hearing and go through this process and not even just, you know, it's one thing versus liability and non-liability finding, but in this case it's literally, you know, it's a $15 fine. And so what he's saying is, you know, we want to put an end to this practice because the city should be doing it right. Why should the impetus be, why should, you know, plaintiffs and class members and people who get tickets in the future be forced to, you know, go through all these hoops to remedy a mistake that should just be very simply handled by the city at the outset? We understand some of the procedure can be not so simple, right? Yeah. So could we talk about some cases here? Certainly the case that, maybe the first case that we need to talk about is the Naughton case. Now all these cases, Midland, Naughton, and the Board of Education are all about claims where someone is saying there are some bad practices going on and all we want to do is stop them, kind of the argument you're making here. But these three cases at least lay down some ground rules as to how people can bring those kind of claims. So I'm going to ask you to address those cases, Naughton, and then we can talk about Midland, and then we can talk about Board of Education. Yes, Your Honor. So with respect to Naughton, the first issue we have there is that that was an administrative decision as to eligibility for benefits by the administrative agency. It wasn't a city issuing a ticket that's adjudicated, that's just adjudicated by the agency. It was an administrative action and the evaluation of its own conduct. That's the first thing. The second thing with that case is that the relief that was being sought was completely retrospective in nature. Essentially what the plaintiffs were saying is that this, that, you know, the Illinois Department of Public Aid is making an eligibility determination based on the wrong criteria, and it got it wrong for me, it got it wrong for these other people, and, you know, although this is a routine practice, it was a practice that was, you know, ultimately the relief there was retrospective. There was no allegation that would say, hey, in the future I personally may be subjected to this, you know, the eligibility determination for that, you know, the Naughton plaintiff or plaintiffs had already been made. So there was no risk of being, you know, submitted to that issue in the future, at least for that plaintiff. So that's the second issue. And then, you know, the other thing is that in the administrative proceedings with respect to the Naughton plaintiff's eligibility, the Naughton plaintiff could have raised the issue in saying, I think your application to this statute is wrong. And the Department of Public Aid could have made a direct finding on that issue. Whereas in this case, you know, the plaintiff could say, yes, on one hand he could have said, you know, I think the ordinance that you're charging me of violating is not supported by the tickets. But in this lawsuit, his allegation is that you have this routine practice. It continues to cause harm. I want it to stop. I don't want to be subjected to it. Isn't that what the people of Naughton were claiming? The very same thing. They're saying, you know, the Department of Public Aid was not applying the right procedures. And, you know, we're all going to come together and challenge it. Everybody who's been affected by it, we're going to challenge that. And didn't the court ultimately say that that's an issue for administrative review? Yes, Your Honor, but the distinction I'm trying to draw here is that in that case, the issue that was before the circuit court that they tried to bring to court was on all fours with the issue that was at issue, that was raised in the administrative agency. Whereas here, the issue that was raised before the administrative agency or that, you know, counsel is saying should have been raised before the administrative agency is different than the one that's being raised in this case. Because it's the relief that's being sought here. And I understand that in Naughton, the effect would be the relief being sought practically would be this judicial determination that the Department of Public Aid got. Maybe this is the best way to put it. In Naughton, had the court ruled in favor of the plaintiffs, it would have effectively told the Department of Public Aid, hey, your prior decision was wrong. Whereas here, if plaintiff prevails on his claim, they were not necessarily saying that, you know, any decision by the DOAH was wrong. What we're saying is the city's practice of issuing these tickets is wrong and it needs to stop. Okay, let's talk about Midland. Yes. All right, in Midland, the Midland Hotel, it was a dispute about employment security, about taxes, that kind of thing. There were two claims apparently. One was a claim for administrative review based on how much taxes were owed. And the second claim was a class action, again, alleging that the department was using the wrong standards. Very similar to the argument you're making here. And what happened there was, of course, ultimately, and there are many steps to this, but ultimately the court found that this was an improper attack, a class action, was an improper collateral attack on an administrative decision. How do we deal with that? So, Your Honor, I think the point I was just making applies to Midland as well, which is that, you know, in Midland, and this is something that I believe the appellate court mentioned, you know, in Midland, effectively a finding in favor of the plaintiffs in that case would have said that this prior administrative decision, I believe it even went on administrative review in a prior case, that those decisions were wrong. Not only, literally the exact same issue on all fours with the issue that was previously decided, classic collateral estoppel issue, was present in Midland Hotel. And although they framed, although Midland Hotel plaintiffs framed it as, well, this is an ongoing thing, and they just keep making this wrong decision, that was, nevertheless, the issue in Midland that, the ultimate issue that the plaintiffs were trying to challenge was the correctness of a prior judicial decision. Again, in this case, although certainly it touches on the correctness of the DOH's finding, or any implicit finding that they would have made against plaintiff insofar as, you know, he paid the ticket without going, you know, to administrative review. The ultimate relief that the plaintiff seeks in this case is different than what he could have and was able to seek in the administrative process. And so, you know, for those reasons, Midland Hotel, Naughton, those types of cases are not really, I understand the facial similarities, but I think that those cases are best described as, you know, pure collateral attack cases and essentially... Let's talk about Board of Education. Yes. Board of Education case, really interesting case. Kind of wonder what the back story was. The trustees of the board sued the pension, its own pension, the trustees of the pension board sued the pension board itself and claiming that, again, same thing, that there was a systematic, inappropriate, wrong system of determining pensions. And the, as I said, the plaintiffs were the trustees, the defendant was the pension board itself, and ultimately didn't the court hold that this case would go forward because it was, these were not the actual teachers who were complaining about how the formula affected them, saying that those teachers would have administrative rights and administrative review rights. And why this case could go forward was because it was not the teachers. It was not the individuals who were harmed. It was this third party, this other idea that it was the trustees who were bringing this systematic claim. How does that fit? So, I understand that distinction, but I think that that's consistent with what I've just been talking about, in that the, instead of being a collateral attack on a prior administrative decision involving, you know, the same parties, same claims, you know, the takeaway from Board of Education, although it was more headed, more had to do with a different party instead of the teachers themselves, the takeaway there is that there was something different about the ultimate case that was before the circuit court from the issues and the parties that were in front of the administrative agency in, or could have been in front of the administrative agency had any proceedings happened. Is there any language in Board of Education that says that the individual teachers who were, would have said that their pensions were not properly calculated, that they should have gone through administrative review? Excuse me? Should the individual teacher, did the Board of Education case even touch on the idea? They're saying the reason why this case could go forward was it was not the individual teachers. It was the Board of Trustees who brought the case, making this claim about the inappropriate calculations. Does the case itself talk about the rights or the avenues that the individual teachers should have used? In other words, it seems to suggest that their avenue was administrative review. Your Honor, I understand where, I believe that that seems to be the implication by the decision. However, again, had an individual teacher brought that claim, it would have been similar to the situation in Naughton and Midland Hotel, as I just mentioned, in that essentially it would be the exact same issue that could have been raised before the administrative agency, that could have been addressed on an individual basis, and any relief that would have been sought in circuit court without going to... Then why isn't it the same here? He could have raised this claim. It could have been aired out. He pled guilty, or whatever the term for it is. Well, Your Honor... Why isn't he in exactly the same position as the teachers in the Board of Education case? Your Honor, he could not have raised this claim. His claim is that the city has a practice that he wants to stop. He could have raised the claim that he was a victim of this practice, but how is he supposed to ask for injunctive relief from the agency? How is he supposed to get the city to stop issuing these tickets by a finding of non-liability in one particular case? How is he supposed to avoid not being subjected to this thing in the future? He can't do any of that. The only thing that he can do is, yes, he could have escaped liability, or actually not even escaped liability for his ticket. He could have escaped a reduced fine for his ticket. He could not have put a stop to the practice that he's seeking to put a stop to. I understand that there is a... If you look at it from a certain lens, it's, well, he's saying his ticket's invalid here, and he could have said it was invalid there. I understand that. But his claims here are much broader, and they're dealing with the fact that the ticket never should have been issued in the first place, and that he should not have even had to submit to these procedures and processes. And he's trying to ask that he not be forced to do that in the future. Those are all forms of relief that he could not have asked for before the DOAH, and in the future would not be able to ask for from the DOAH. So, yes. Certainly he could have asked for the first part. He said that he should have never received this ticket in the first place. He could have gone in and said, I should not have received this ticket because it's written outside of the central business district. That's correct, Your Honor. What I meant was that the city shouldn't have been issuing tickets like these in the first place in the sense that it should not have done it in his case, it shouldn't have done it in other cases, and it should not be doing it in the future and should have implemented procedures and practices to make sure that this didn't happen. You know, and, you know, as an analogy, I will say, you know, in the administrative code or the municipal code of Chicago, there are provisions that say, you know, if the ticket lacks X, Y, and Z, or if the ticket meets these criteria, it's, you know, essentially automatically dismissed. And, you know, this would be the type of thing that, you know, very easily by operation of law, the city has procedures to evaluate the sufficiency of its tickets and could very easily, you know, I understand mistakes happen, but that mistake should not require, you know, 30,000 individuals, and that's only through 2018 to go through, you know, a process. So, you know, for those reasons, we ask that you affirm the appellate court's decision in this case. Thank you. Thank you very much. Counsel for the appellant. Cindy Butler. I would just like to make a few quick points, Your Honors. First, I want to point out that the fact that Mr. Pinkston alleges here routine practice, I mean, that's nothing unusual. That's nothing more than alleging that the city makes mistakes and that these tickets, there's nothing in the allegations to suggest that there was anything other than individual mistakes of ticketing agents in this case. And that is precisely what DOAH was established to provide a remedy for, adjudicating these types of mistakes. And in the Municipal Code itself, it expressly contemplates that one would have this type of, would raise this type of defense. It allows for an individual to contest their ticket on the basis that the violation notice is inconsistent on its face or that the facts alleged in the violation notice, you know, that the violation was not, that the illegal condition did not exist at the time the notice was issued. Counsel, I have a question. If what you say, what you're asserting is true, then DOAH would resolve these tickets individually on a case-by-case basis. What the plaintiff is alleging that by bringing a class action, the court would be able to look at this in a cumulative way and see the pattern. Whereas if it's done individually, that would never be brought to light and the practice would go on indefinitely. That's what your opponent is implying. Can you respond to that? Well, Your Honor, DOAH is set up to handle mistakes just like this. And there are always going to be mistakes whether there's, you know, if it's for this type of ticketing, for other types of ticketing, other types of tickets. At the scale that DOAH operates in a city of 3 million people with millions more in tourists and commuters, there are always going to be mistakes. And if you gather a mass, you know, a number of those mistakes together, it can always look like a routine or a widespread practice. So if we were to allow Mr. Pinkston to bypass his administrative remedies in this case and bring a class action in the circuit court instead, it would effectively be nullifying the administrative process because if one waits long enough, in this case we're looking back to 2013, if one waits long enough we're always going to be able to see a pattern of mistakes. But by going through DOAH and going through that process, it allows an individual a very simple, straightforward, cost-effective way to challenge their ticket. If they receive another one, they can go through that process again. So there is that adequate remedy. They will not be irreparably injured by having to go through that process. And that is really why the General Assembly has provided this process is that we do not want to, it does not want to clog the circuit courts with this type of litigation. But, again, in the event that, you know, Mr. Pinkston or another similarly aggrieved party could provide evidence of some sort of, you know, maybe, I don't know what that evidence would look like, some larger, you know, number of tickets. If a party like that could prevail in front of DOAH, they could attempt to get an injunction in the circuit court in a separate action. We're not contending that that would prevail, but it's not the exhaustion requirement. How would that work in front of DOAH, though, what you just said? I mean, can they bring an action relating to a group of erroneously issued tickets before DOAH? Before DOAH, they could not bring a group of tickets. Maybe I misunderstood what you just said. Well, Your Honors, the problem that Mr. Pinkston identifies here is not a unique problem. It's actually the reason why we have this administrative process is that we're always going to have, if we can gather up enough individuals who have received erroneous tickets, either, you know, erroneous in the way that Mr. Pinkston alleges or some other type of error either in ticketing or in any of the other areas where DOAH, you know, operates, we're always going to be able to gather up a mass enough tickets to make an allegation of a widespread practice. But just the creative terminology in Mr. Pinkston's complaint is not a way for him to bypass his administrative remedies because it's the very reason why these remedies exist in the first place. And seeking an injunction in a case like this, he has to show that he has no remedy at law, and he does. He has the administrative process, and that's the remedy that would make an individual whole. He would be able to avoid paying the fine in the first place, and I do want to point out that he does seek to recover what he's paid here, but he could have avoided paying that in the first place in DOAH. And if he were to get a future ticket, which in this case is completely speculative, so it does call into question his standing to bring this case, that would be speculative because he would have to have parked at an expired meter outside the central business district to even receive one of these tickets. So he would have to show that. And if he does get another one in the future, then we have DOAH to handle that. And if indeed there are enough of these tickets coming before DOAH, then DOAH has the ability to flag this issue for the city, and that's one reason why we require exhaustion. One of the benefits of exhaustion is that it allows the agencies to flag these issues to the governing body and take care of them without the need to go to the courts. And I do want to point out as well that the cases that we do discuss in their briefs, while they do have some distinguishing features of them, the facts that distinguish this case make it more appropriate for administrative review because of, or sorry, administrative remedies because of the factual questions involved. In all of those cases, despite some of the differences that they do have, the courts were very clear that where the General Assembly provides a specific remedy, a specific administrative procedure, the parties are not allowed to disregard that procedure and head right to the circuit court for judicial relief without first taking, availing themselves of those remedies. And so if there are any further questions, Your Honor, we ask that this court reverse the judgment of the appellate court. Thank you very much. Thank you. Counsel, both sides. Agenda number 15, number 128-375, Alan Pinkston versus the City of Chicago will be taken under advisement.